UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON LEE SCROGGIN,

    Plaintiff,

v.

    CAUSE NO. 3:20-CV-441-DRL-MGG

GALIPEAU *et al.*,

    Defendants.

OPINION AND ORDER

Brandon Lee Scroggin is incarcerated at Westville Correctional Facility. He filed a complaint and a motion for a preliminary injunction. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the complaint and dismiss it if the action "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief."

Mr. Scroggin's complaint is forty-two pages long, handwritten in small print; he names thirty-two defendants. Most of his claims don't arise out of the same common nucleus of operative of facts, and they're too separated by time, locations, and different defendants to be related under Federal Rule of Civil Procedure 20(a)(2).

Mr. Scroggin's complaint begins in April 2019. He alleges that Lt. Creasy and Sgt. Daniel Diaz told other inmates in his dorm (the 8-Dorm) that he snitched on a fellow inmate. He claims that, as a result, the inmates assaulted him numerous times. He complained to the Department of Internal Investigations and was moved to a different location. However, a month later, he was moved back, with Lt. Creasy, Sgt. Diaz—and now Captain Farley—telling the dorm inmates again that Mr. Scroggin

was a snitch. Mr. Scroggin refused to move but was forced to comply after Sgt. Cartagenna slammed his face in the concrete.

The complaint then seemingly moves forward nine months, and Mr. Scroggin is now in the O-dorm. It is not clear who assigned him to O-dorm or when he was assigned to O-dorm. He claims that in January 2020, another inmate—L.C.—raped him in revenge for snitching on L.C.'s associates. Mr. Scroggin called the #80 hotline to report the rape but no investigation was initiated. A month later, on February 3, 2020, he was going to the cafeteria when he was thrown over a railing by other inmates for being a snitch. He called the #80 hotline again and, though he claims that his pleas were being ignored, he was moved out of the O-dorm two days later, on February 5.

That day, Cpt. Armstrong and Sgt. Livers took him to the C-1 dorm, but he protested because he had a protective order against F.S. who was housed there. Mr. Scroggin saw F.S. and tried to get out of the C-1 dorm but was wrestled down by Cpt. Armstrong, Sgt. Livers, and Sgt. Diaz. According to him, Sgt. Livers and Sgt. Diaz punched him in the ribs, causing them to break. Mr. Scroggin later asked for medical help, but Sgt. Diaz used a TASER device.

Mr. Scroggins dedicates the next twenty-five pages of his complaint to the time period from February 8 until May 18, 2020, and his efforts to have the Department of Internal Investigations investigate his claim that he was raped and assaulted. He alleges numerous times that different defendants laughed at him when he told them that he had been raped and didn't take him seriously. He also claims that his right to privacy was violated when he was forced to describe his rape to various person from within his cell with other inmates overhearing in nearby cells. Along with this, he explains how he was on-and-off suicide watches and hunger strikes because he was afraid of being moved into the general population. He claims that around February 20, he was deprived by medical staff of adequate medical care.

Dispersed in this narrative are Mr. Scroggin's claims that the guards used unreasonable force against him in violation of the Fourth Amendment to the United States Constitution. Mr. Scroggin claims that on February 18, 2020, as he was taken against his will from medical housing to 6-C dorm, he headbutted an inmate after which Anthony Parham took him down to the ground and then walked him past two cells with his fingers dug into his neck. He claims that someone then smashed his face into the wall. He also claims that Cpt. Herr picked him up off the ground and smashed his face into the floor. On March 14, a day when he was being moved from one place to another, Sgt. Jones made him fall and break his face. And on May 9, Officer Timmons allegedly slammed his hand without provocation when he placed it in the food slot to receive his meal. In between all those dates he mentions countless encounters with the nurses, investigators, guards, the Warden and the Assistant Warden. He wanted each of them to do something about investigating his rape and assaults and to ensure that he isn't moved into general population.[1]

Plaintiffs may bring multiple unrelated claims against a single party, but unrelated claims against different defendants belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . ."). Here, Mr. Scroggin's claims fall into several unrelated categories: failure to protect him in April 2019; multiple unrelated instances of the guards using excessive force beginning in February 2020; and failure to provide appropriate medical care during his hunger strikes and while on suicide watch. Each of these claim categories and sub-categories involve different defendants in unrelated circumstances.

---

[1] While claiming that the prison officials refused to investigate his rape claim, Mr. Scroggin also describes that two officials from the Department of Internal Investigations told him on February 14 that they reviewed a video recording from nearby his cell but could not find anything to support his claim. He was also told that the investigation was closed because of his lack of cooperation.

Another category is Mr. Scroggin's claims that various officials failed to investigate his rape complaint. But such claims are doomed to fail. While prisons have a duty to protect inmates in their care, "the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *see also Lee v. Kennedy*, No. 19-CV-1277, 2019 WL 5196372, at *1 (C.D. Ill. Oct. 15, 2019) ("Further, Plaintiff does not have a freestanding constitutional right to the investigation into another's alleged wrongful activity.") (citing *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015)). Moreover, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

When a *pro se* plaintiff files a lawsuit with unrelated claims, this court's practice is to allow him to decide which claim (or group of related claims) to pursue in the instant case and to allow him to decide whether to bring the remaining claims in separate lawsuits. This is the fairest solution to the plaintiff because "the plaintiff as master of the complaint may present (or abjure) any claim [she] likes." *Katz v. Gerardi*, 552 F.3d 558, 563 (7th Cir. 2009). Therefore, Mr. Scroggin will be given an opportunity to file an amended complaint that includes only the related claims that he wants to pursue in this cause of action. If he does not amend his complaint, or if the amended complaint also asserts unrelated claims, the court on its own will pick which claim or claims will proceed in this case.

Mr. Scroggin has also filed a motion for a preliminary injunction. He claims to be in a life or death emergency because "the gangs are trying to kill [him]." ECF 4 at 1. He states he needs protective custody "due to his current threats, assaults, rape, staff retaliation. Also filing prisoner complaint creates bigger safety issue." *Id.* at 2. He also wants a no-contact order against Officer Quinton Davis

4

whom he accuses of recently assaulting and sexually abusing him.[2] He does not go beyond these allegations in his motion, so the gravamen of his current situation can be derived from his complaint only. Having read the complaint, the court is satisfied that Mr. Scroggin is not currently placed with inmates whose revenge he fears. Therefore, he appears to be in no imminent danger and has not established that a protective custody placement is the only means to assure his safety. He states that protective custody is also required because of staff retaliation but he doesn't explain how protective custody would safeguard him from prison staff. Based on the available information, the court cannot conclude that Mr. Scroggin will suffer irreparable harm absent injunctive relief. *See Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004) (one element of showing entitlement to injunctive relief is establishing real danger of irreparable harm). In addition, deciding a motion for injunctive relief requires evaluating the interests of the public and the movant. Here, unnecessary intrusions into the management of prisons are generally disfavored. *See* 18 U.S.C. § 3626(a) (prison-related injunctions must be necessary to remedy the violation and narrowly tailored); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). After considering the relevant factors, the court finds that Mr. Scroggin has not demonstrated that he is entitled to injunctive relief. If the circumstances are other than as described here, and substantiate a basis for injunctive relief, Mr. Scroggin may renew his motion when he files his amended complaint.

    For these reasons, the court:

(1) DENIES Mr. Scroggin's motion for a preliminary injunction (ECF 4);

(2) GRANTS him until **August 7, 2020** to file an amended complaint that includes only related claims arising out of the same occurrence or series of occurrences; and

---

[2] This allegation is not stated in the complaint.

(3) CAUTIONS him that if he fails to respond by this deadline, or if the amended complaint persists in unrelated claims, the court will pick which claim(s) he's allowed to proceed with in this case and dismiss the rest of them.

SO ORDERED.

July 8, 2020

*s/ Damon R. Leichty*
Judge, United States District Court