UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRANDON LEE SCROGGIN,

        Plaintiff,

  v.                                         CAUSE NO. 3:20-CV-441-DRL-MGG

GALIPEAU *et al.*,

        Defendants.

## OPINION & ORDER

Brandon Lee Scroggin is incarcerated at the Westville Correctional Facility ("WCF"). He filed an amended complaint and a motion for a preliminary injunction. "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, because Mr. Scroggin is incarcerated, under 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Id.*

In the amended complaint (ECF 21), Mr. Scroggin claims that he filed several requests for protective custody, while at the same time asking to speak to someone in WCF's Department of Investigations and Intelligence (DII) concerning his issues with gangs and threats against him. He also called the hotline for assaults and sexual assaults about twenty times asking to be seen by DII. He next sent a letter to the Ombudsman Bureau to ask them to email DII on his behalf. He then wrote DII directly and had someone else send an email to DII on his behalf. He claims that all his efforts fell on deaf ears and nothing was done to prevent other inmates from assaulting him in November 2019 and February 2020 and raping him in January 2020. He names six defendants: C. McKinney,

Director/Chief Investigator for DII; Investigator Jessica Alvarez-Statham; Investigator Ms. Motsenhagen; and Investigator Ms. Coronet; also Warden Galipeau and Assistant Warden Kenneth Watts.

If a prisoner is to sue a person for personal liability and monetary damages, he needs to allege more than Mr. Scroggin has. First, although he says that he tried multiple times to bring his concerns to DII, he hasn't alleged that any of the four named defendants in DII actually knew of his complaints. Granted, he eventually spoke with Investigators Alvarez-Statham and Motsenhagen, but that happened once he was already isolated in the restrictive housing unit (*see* ECF 13 at 6). He hasn't alleged that, after meeting with the two investigators he suffered any harm from other inmates. In short, for a case to proceed, Mr. Scroggin must allege that the DII department defendants he is suing were aware of his complaints. And just as important, Mr. Scroggin must allege his complaints were particularized and not merely concerning the general dangers the inmates experience in prisons. The Court of Appeals for the Seventh Circuit requires specifics:

> [Plaintiff] testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist [plaintiff] in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by [plaintiff] are insufficient to alert officers to a specific threat. *Butera [v. Cottey]*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id.*

*Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

It is clear that Mr. Scroggin complained of past allegations but, on the basis of his amended complaint, it isn't plausible to conclude that he provided sufficient information for any of the defendants in the DII office to know that he wasn't just speculating what could happen to him out of fear of what had already happened, particularly in restrictive housing. *Cf. id* at 640 ("This lack of

2

specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.").

Next, the court considers Mr. Scroggin's allegations against the Warden and the Assistant Warden. He spoke with them sometime after he was already in solitary custody, recounting to them his complaints about the assaults and rape, but he hasn't alleged that he was subjected to any assaults from other inmates after he met with them. Again, Mr. Scroggin must allege they knew of real danger to Mr. Scroggin and chose to do nothing about it as opposed to alleging that he told them about his past woes and they didn't investigate. The failure to investigate claims are foreclosed as already explained in the court's July 8 Order:

> . . . Mr. Scroggin's claims that various officials failed to investigate his rape complaint. But such claims are doomed to fail. While prisons have a duty to protect inmates in their care, "the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); see also *Lee v. Kennedy*, No. 19-CV-1277, 2019 WL 5196372, at *1 (C.D. Ill. Oct. 15, 2019) ("Further, Plaintiff does not have a freestanding constitutional right to the investigation into another's alleged wrongful activity.") (citing *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015)). Moreover, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

(ECF 10, fn. 2).

Finally, insofar as Mr. Scroggin believes that the Warden and the Assistant Warden should be liable because they are the top supervisors at WCF, he cannot maintain a § 1983 lawsuit against them under a theory of *respondeat superior*. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

This complaint does not state a claim for which relief can be granted. Nevertheless, Mr. Scroggin may file an amended complaint if he has additional facts which he believes would state a claim because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). If he once again amends the complaint, he should describe the actions or inactions of each defendant whom he believes to be liable, including information about when and where the events took place and where he was at any particular relevant moment.

Along with his amended complaint, Mr. Scroggin has also filed a motion for a preliminary injunction. The gist of the motion is that he is safe now because he is in segregation until mid-November due to his misconduct, but he will be placed in the general population—where the threats against him abound—after his disciplinary period is over. He does say that the Indiana Department of Correction approved his transfer to another prison after he completes the disciplinary period—something he wants—but he believes that he will first be placed in the general population where he will suffer inmate abuse. But at this time, these are mere speculations as what will happen months from now, and the point of preliminary injunction is not to satisfy a plaintiff's speculation but to protect him in case of real and imminent harm. Just as in his first motion for a preliminary injunction, so here, too, Mr. Scroggin has failed to allege that he will suffer an irreparable harm absent injunctive relief. *See Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004) (one element of showing entitlement to injunctive relief is establishing real danger of irreparable harm); (ECF 10 at 5-6).

For these reasons, the Court:

(1)     DENIES Mr. Scroggin's motion for a preliminary injunction (ECF 23);

(2)     DIRECTS the clerk to put this case number on a blank Prisoner Complaint Form (INND Rev. 2/20) and send it to Mr. Scroggin;

(3) GRANTS him until **August 21, 2020** to file an amended complaint if he so wishes; and

(3) CAUTIONS Mr. Scroggin, that, if he does not respond by that deadline, his case will be dismissed under 28 U.S.C. § 1915A because the amended complaint does not state a claim for which relief can be granted.

SO ORDERED.

July 24, 2020  *s/ Damon R. Leichty*
Judge, United States District Court