UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDON LEE SCROGGIN, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL DIAZ, <br><br> Defendant. | CAUSE NO. 3:20-CV-441-DRL-MGG |

OPINION AND ORDER

Brandon Lee Scroggin, a prisoner without a lawyer, filed a second amended complaint alleging he was not protected from attack by fellow inmates. ECF 32. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Scroggin alleges that other inmates threatened to assault and kill him in 8-Dorm in April 2019. ECF 32 ¶¶ 6, 8. He contends Sgt. Daniel Diaz[1] refused to move him out of the dorm unless he shared the location of drugs or weapons in the dorm. *Id.* ¶ 7. After Mr. Scroggin provided the information, he alleges Sgt. Diaz told the inmates on the

---

[1] In the list of defendants, Daniel Diaz is identified as a Lieutenant, but in the body of the complaint he is called Sgt. Diaz. In this opinion, he will be identified as Sgt. Diaz.

dorm he was a snitch. *Id*. He was then moved to D-2-W Dorm for a few weeks before being returned to 8-Dorm. *Id*. ¶ 8. Once there, he says he was attacked several times between April and September. *Id*. ¶ 9. After several moves, he was placed in O-1 Dorm. *Id*. ¶¶ 10-13. He says he was beaten by a gang member in O-1 Dorm in December 2019. *Id*. ¶¶ 13-14, 16. After several more moves, he was placed in O-1 Dorm, where he alleges a gang member raped him on January 6 or 7, 2020. *Id*. ¶¶ 15-16, 19-20. On February 3, 2020, he says four gang members attacked him while he was leaving the chow hall. *Id*. ¶ 24. He says these incidents occurred because the perpetrators believed he was a snitch.

Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). To state a claim for failure to protect, a plaintiff must establish the defendant "had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted). "[I]t's common knowledge that snitches face unique risks in prison." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). Prison officials may be liable when they knew an inmate "faced a significant risk of harm from a 'particular vulnerability' and exposed him to that risk anyway." *Wright v. Miller*, 561 F. Appx. 551, 555 (7th Cir. 2014) (quoting *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005)). Such are the allegations here. Sgt. Diaz is alleged to have labeled Mr. Scroggin a snitch in front of other inmates. As a result, Mr. Scroggin says he was attacked numerous times because of that label. These allegations state a claim against Sgt. Diaz.

2

Mr. Scroggin makes many failure-to-protect allegations, but none of them state a claim. "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). And "the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). As described in one case:

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. *Butera*, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. *Id*.

> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

Mr. Scroggin alleges before he was returned in April or May 2019 to 8-Dorm where he was attacked, he told someone he would be in danger if he went back there. ECF 32 ¶ 8. However, he does not say who he told. He alleges before he was moved in November 2019 to O-1 Dorm where he was attacked, he told Director Philip Sonnenberg he did not want to leave B-1 Dorm, but he makes no mention of saying he would be unsafe in O-1 Dorm. *Id*. ¶ 12. He alleges before he was moved in January 2020 from D-2-W Dorm to O-1 Dorm where he was attacked, he told Sgt. Diaz and Ms. Motsenhagen he had been threatened by inmates in D-2-W and C-1 Dorms, but he makes no mention of telling them he faced an impending risk of harm if he was returned to O-1 Dorm. *Id*. ¶ 18. The complaint does not allege facts indicating that either defendant knew he had been attacked in O-1 Dorm the month before; but, as *Klebanowski* explained, even if they did, that alone would not be sufficient to put them on notice that he was in danger if he returned. Mr. Scroggin alleges before he was attacked on February 3, 2020, he left two voice messages for internal affairs about the rape in O-1 Dorm, but he makes no mention

of telling them about future dangers. *Id*. ¶ 21. He alleges he wrote to internal affairs, but again makes no mention of telling them about future dangers. *Id*. ¶ 23. Therefore, none of these allegations state a claim against any of the defendants.

Mr. Scroggin alleges he was never properly interviewed regarding his protective custody requests by appropriate prison employees as required by prison policies. ECF 32 ¶¶ 5, 10, 19. The Constitution entitles a prisoner to protection from a substantial risk of serious harm, but not to specific procedures, even ones the prison sets. *See Estate of Biegert v. Molitor*, 968 F.3d 693, 699 (7th Cir. 2020) (violations of state laws, regulations, and practices do not state a federal claim). He alleges the prison's protective custody policies are deficient. ECF 32 ¶ 3. "But an inmate cannot show a widespread practice of an unconstitutional nature, such as a custom of ignoring prison policy, by pointing to isolated incidents of inmate-on-inmate brutality." *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018) (quotation marks omitted). Mr. Scroggin also alleges his assaults were not properly investigated. ECF 32 ¶¶ 13-14, 21-23, 25-28. As previously explained, "[w]hile prisons have a duty to protect inmates in their care, the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." ECF 10 at 3 (quotation marks omitted). Nothing in this amended complaint changes that analysis.

Mr. Scroggin captioned his complaint as a "Class Action" though he did not file a motion asking to certify a class under Federal Rule of Civil Procedure 23. However, because he is proceeding without counsel, the court will consider his class action request anyway. To be certified as a class, Mr. Scroggin must first satisfy the four elements in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See*

*Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Then, the case must fall under one of the conditions specified in Rule 23(b). *See* Fed. R. Civ. P. 23(a), (b); *Lacy v. Cook Cty.*, 897 F.3d 847, 864 (7th Cir. 2018). Here, the only surviving claim is that Sgt. Diaz labeled Mr. Scroggin a snitch, causing gang members to attack him multiple times. Numerosity requires there be so many members of the potential class that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The complaint alleges "[o]n personal observation average of 10-15 inmates a day has the[ir] rights violated as Scroggin has in this complaint." ECF 32 ¶ 32. It is unclear what rights he believes have been violated, but "[o]ne broad, vague statement about an occurrence affecting other inmates in a detention facility does not support the inference of a widespread custom." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (quotation marks and citation omitted). What is clear is there is no allegation that any other inmate was labeled a snitch by Sgt. Diaz or anyone else – much less so many they could not be joined if that were otherwise appropriate.

For these reasons, the court:

(1) GRANTS Brandon Lee Scroggin leave to proceed against Sgt. Daniel Diaz in his individual capacity for compensatory and punitive damages for labeling the plaintiff a snitch in front of other inmates on 8-Dorm in April 2019 thereby causing gang members to attack him (a) several times between April and September in 8-Dorm, (b) in December 2019 in O-1 Dorm, (c) on January 6 or 7, 2020, in O-1 Dorm, and (d) and on February 3, 2020, as he was leaving the chow hall in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Galipeau, C. McKinney, Coronet, Motsenhagen, Jessica Alvarez Statham, Hicks, Kenneth Watts, Department of Investigations and Intelligence, John Does, Phillip Sonnenberg, and John Does;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Sgt. Daniel Diaz, at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 32) pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of Sgt. Daniel Diaz, if he does not waive service and if it has such information; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Sgt. Daniel Diaz to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

February 2, 2021                                                  *s/ Damon R. Leichty*
                                                                    Judge, United States District Court